NO. 12-00-00346-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


WESLEY CHANDLER DOBBS,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW #3


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

PER CURIAM


 Wesley Chandler Dobbs ("Appellant") appeals his conviction for driving while intoxicated
(DWI). After finding Appellant guilty, the jury assessed punishment at confinement for forty-five
days and a fine of $1,000.00. In one issue, Appellant challenges the factual sufficiency of the
evidence to support his conviction. We affirm.


Background


 On June 1, 2000, Tyler police officers J. E. Smith ("Smith") and Judy Thurman ("Thurman")
were "running radar on Grande Boulevard" in Tyler, Smith County, Texas. At approximately 12:18
a.m., the officers detected Appellant driving fifty-seven miles per hour in a posted forty-five mile
zone. They conducted a traffic stop, and Smith approached Appellant. At that time, Smith smelled
"an odor of an intoxicant" on Appellant's breath and also noted that Appellant's speech was slurred
and that he appeared nervous. When Smith asked for Appellant's license, Appellant "fumbled"
through his wallet and ultimately found his license in one of his pockets.


 Smith issued Appellant a warning ticket for speeding, and Appellant agreed to perform
several field sobriety tests. Smith administered a variety of tests, including the horizontal gaze
nystagmus ("HGN") test. Appellant admitted drinking three beers, but refused to take a breath test.
After administering the tests, Smith arrested Appellant for DWI, and the officers transported him to
jail. 

 At the jail, Appellant was videotaped performing additional sobriety tests. Those tests
occurred approximately forty minutes after the initial stop, and Appellant performed "a little bit
better." However, Appellant continued to exhibit signs of intoxication and Smith concluded that
Appellant was intoxicated.


 Standard of Review


 In conducting a factual sufficiency review, an appellate court examines the jury's weighing
of the evidence. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In the course of that
examination, the court must conduct a neutral review of all the evidence presented at trial without
the prism of "in the light most favorable to the prosecution." Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997). However, this court must not substitute its judgment for that of the jury. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Therefore, we will set aside the verdict
only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Clewis, 922 S.W.2d at 135.

 Appellant argues that we must find the evidence factually insufficient if the State did not
exclude every reasonable hypothesis except his guilt, which was the method for reviewing the
sufficiency of circumstantial evidence prior to the rejection of that rule in Geesa v. State, 820 S.W.2d
154 (Tex. Crim. App. 1991). Appellant contends that Geesa has been overruled by Paulson v. State,
28 S.W.3d 570 (Tex. Crim. App. 2000), thereby reinstating the pre-Geesa method of review. 
However, the court of criminal appeals expressly stated that Paulson overrules only that part of the
decision in Geesa that required an instruction on the definition of reasonable doubt. Paulson, 28
S.W.3d at 571. Nothing in Paulson addresses factual sufficiency review, and we reject Appellant's
interpretation of the holding.


Factual Sufficiency of the Evidence


 A person commits an offense if he is intoxicated while operating a motor vehicle in a public
place. Tex. Pen. Code Ann. § 49.04(a) (Vernon Supp. 2002). "Intoxicated" means not having the
normal use of mental or physical faculties by reason of the introduction of alcohol into the body or
having an alcohol concentration of 0.08 or more. Tex. Pen. Code Ann. § 49.01(2)(A), (B) (Vernon
Supp. 2002). In his sole point of error, Appellant argues the evidence is factually insufficient to
support his conviction. Specifically, Appellant contends that his videotaped performance on the field
sobriety tests coupled with the absence of other signs of intoxication outweighs the evidence of
guilt. (1) We disagree.

 Smith testified that he is an eighteen-year veteran of the Tyler Police Department and that
he has had extensive training in dealing with intoxicated drivers. He is also one of three instructors
in East Texas who teach DWI enforcement. After Appellant stopped his vehicle in response to the
emergency lights and siren, Smith approached Appellant and testified that he smelled "an odor of
an intoxicant." He also noticed that Appellant's speech was slurred and that he appeared nervous. 
When he requested Appellant's license, Appellant "fumbled" through his wallet, found the license
in another pocket, and presented it to Smith. 

 After receiving a warning ticket for speeding, Appellant agreed to perform several field
sobriety tests. Smith administered the horizontal gaze nystagmus ("HGN") test, the "nine step and
turn" test, the "one-legged stand" test, the "finger and nose" test, and the "alphabet recitation" test. 
Appellant was able to recite the alphabet, but on the remaining tests he exhibited signs of
intoxication. During the HGN test, Appellant exhibited all six clues indicating intoxication. During
other tests, Appellant swayed and either put a foot down or used his arms to help maintain his
balance. He was able to touch the tip of his nose with his left finger, but not with his right. He also
refused to take a breath test. 

 Based on Smith's experience and the results of the tests, Smith formed an opinion that
Appellant had lost the normal use of his mental and physical abilities, was intoxicated, and was
unable to drive a motor vehicle safely. Smith arrested Appellant for DWI, and the officers
transported him to the Smith County Jail. Smith again administered field sobriety tests, which were
videotaped. Those tests occurred approximately forty minutes after the initial stop, and Appellant
performed "a little bit better" on the tests at the jail. However, Appellant exhibited signs of
intoxication during the tests and exhibited all six clues indicating intoxication when Smith
administered the HGN test. Smith again concluded Appellant was intoxicated. During Smith's
testimony, the State introduced the videotape of the tests. As the jury viewed the tape, the prosecutor
stopped it periodically for Smith to explain each test shown and the signs of intoxication he observed
while he administered each test.

 Smith further testified that he believed Appellant had more than three beers to drink and that
it was typical for a person suspected of DWI to admit to drinking two beers. He stated that
Appellant's performance improved at the jail because he had already been through the tests once and
because the "adrenaline dump" he would have experienced on arrest would have been a sobering
experience for him. 

 Thurman testified that she was driving at the time of the stop. When the radar showed that
Appellant was exceeding the posted speed limit, she turned on the overhead emergency lights, pulled
into the roadway, and drove behind Appellant. After the officers followed Appellant for one to two
blocks, he began "pulling to the right," and Thurman initiated the siren. After driving another two
blocks, Appellant stopped the vehicle after making a left turn onto a street that crossed Grande. She
testified that it is not normal for someone not to see emergency lights at night and that she also
considered it abnormal to turn left instead of right for a traffic stop. 

 Thurman testified that she got out of the vehicle and that Appellant seemed a little upset
when she first moved close to him. She could smell alcoholic beverage coming from his mouth even
when he was not talking. She observed his performance on all of the sobriety tests except the HGN
and concurred with Smith's opinion that Appellant was intoxicated. Thurman attributed any
improvement in Appellant's performance on the tests at the jail to the fact that his "blood level"
would decrease in the interval between the initial stop and the videotaped tests. She further testified
that no single test other than the HGN will indicate whether someone is probably intoxicated. 

 In summary, the evidence in this case shows that both police officers who conducted the stop
noted the odor of alcohol, Appellant's slurred speech, and his nervousness. At the scene and at the
jail, Appellant showed all six clues of intoxication when the HGN test was administered and
additional signs in his performance of other tests. He admitted he had been drinking, and both
officers testified they believed he was intoxicated. In addition to the testimony of Smith and
Thurman, the jury could have also considered Appellant's refusal to submit to a breath test in
determining his guilt. Finley v. State, 809 S.W.2d 909, 913 (Tex. App.--Houston [14th Dist.] 1991,
pet. ref'd). 

 After reviewing the entire record before us in this case, we conclude that a reasonable jury
could infer that Appellant had lost the normal use of his mental or physical faculties by reason of the
introduction of alcohol into his body. We therefore conclude that the jury's verdict was not so
against the great weight of the evidence as to the clearly wrong and manifestly unjust and that the
evidence is factually sufficient to support Appellant's conviction for DWI. Accordingly, the
judgment of the trial court is affirmed.




Opinion delivered February, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.



















(DO NOT PUBLISH)
1. Appellant did not request the inclusion of the videotape in the reporter's record. Therefore, the videotape is
not a part of the record on appeal. However, Smith testified about the contents of the videotape as it was being viewed
by the jury, and we do not believe our review is impeded by its absence.